Mr. Herrick. Good morning, Your Honors. Peter Herrick for the Appellant, R.T. Foods. As I know, you've gone over the briefs, so we don't have to get into that. And the two products at issue... Do the carborundum factors have anything to do with the analysis here, or are they confined to use provisions? Well, they're confined to the use provision, but one of our arguments is that the trial court never got into the carborundum factors, which they should have, because they stopped short in their analysis. Well, what case says... I mean, it makes a certain amount of sense. I understand what you're saying, that we looked at at least some of the carborundum factors in making a judgment like this, but what case says that those factors are relevant here? I mean, it doesn't seem to me that the tomato case, the Orlando case, or the crawfish case really look to the carborundum factors. Well, in our argument on the crawfish case was that the carborundum factors, when they looked at the factors for a dumping case, are very similar to the carborundum factors as far as actual use and marketing and what the consumers expect and so forth. But there's a specific regulation there, right? Yes, there is. But so what case has said that we can look to the carborundum factors outside of a use provision? Well, when I was looking at the Orlando case, there was one sentence in there about a maxim that the use provision is more specific than the eonominy provision, and therefore you would do an analysis based on the use provision, which would bring in the carborundum factors, assuming that maxim is correct, which I believe it is, is that use is more specific than the eonominy provision. And here, what we have is, we have a substantial transformation that's taken place, which was the crawfish case, basically, is that our vegetables went through a process and they emerged as a new product. The new product is a food preparation. Now, the trial court concluded that it was a food preparation, but then they went on to say that it's elsewhere provided. But it's not elsewhere provided. What it was looking at is that if it's prepared or preserved, then it's elsewhere provided under 2004. But as a food preparation, it's not elsewhere provided. Therefore, it can't be under 2004. It's got to be 2106. Mr. Herrick? Yes, sir. On page 13 of your brief, RT says, as reported in an article reviewing the NEST, a purchaser can expect by purchasing the NEST a great premium meal that makes the worst cook look like a pro after being heated. And it cites 106, 107 in the appendix. I can't find that in there. Where is it? The 106, 107? I find 106, 107. I'm looking at them. Where's the review of the NEST? And I see a statement that says, in general about foods, that Trader Joe's offers amazing pre-made meals that even make the worst cook look like a pro. There's no mention of the NEST. I'm familiar with the statement, Your Honor, but its location in the appendix. If I have time, I'll see if I can find it. If it's not- Oh, you should know your appendix, Mr. Herrick. You're right, Your Honor. I should. Yeah, you should. You cited it. And if you cite something as supporting a statement, it should support it. So I want you to be able to tell me that while you're at it. On page 15 of the brief, it says the products are sold and displayed in the aisles for frozen prepared meals and appetizers. On the other hand, frozen individual vegetables are displayed in a different aisle, and it cites Joint Appendix 52 to support both those propositions. And where's that statement made in Joint Appendix 52? I couldn't find it. Your Honor, the 52 was the deposition- 52 was an affidavit, and there's no foundation in it. And 52, by the way, is your reference to pre-made meals making even worse look like a probe, see Exhibit A, which I presume is 106, 107, although it's not attached in the appendix. Who is Mike Riella, who the declaration appears on 52? Employee of the appellate, Your Honor. There's no foundation for anything he says in this appendix. In the appendix? That's right. You're missing everything from above paragraph 6. Yeah, I recall that's correct, Your Honor. Does he, in the earlier part of his declaration, say what his basis is for this? Yes. His personal experience, Your Honor. Without a foundation, I don't see any basis. Well, if it cannot be located, I'd like the opportunity to present it to the court after we've had this oral argument today, if that's possible. You'll have to ask the presiding judge. You can submit a brief letter addressing that question, answering that question. Okay. One page, one page, okay? Okay, I appreciate that, Your Honor. And then the government can respond to that if it wishes. Do that in the next week. Okay. So, let's continue the argument that we have is that there is a substantial transformation of these two products into a new product, namely a food preparation. And the food preparation is not elsewhere provided for, therefore it has to be under 2106. And in fact, you know, just sort of embellishing on what we've just discussed here, what happens to Trader Joe's is that, picking up on the comments made by the employee there, is that when you go to Trader Joe's, as he indicated, you go down the aisle and you've got frozen vegetables on one aisle and you've got food preparations on another aisle. So, you're getting into the carburetor factors of what are the expectations of the consumer in this product. And it is definitely more than prepared or preserved. One of the carburetor factors is cost. Is there anything in the record about cost? Not, that's not one of the most important factors that we'll be relying on, Your Honor. Rice pulses must be a substantial difference in cost between tempura, fries, beans, or whatever they are. Yeah, because of the process that takes place in Thailand, I mean, they do incur costs. Obviously, they incur costs because everything, as they indicate, is done manually over there when they're doing this preparation, as opposed to just vegetables that you pick and freeze them and then put them out for display. So, there is a higher cost in producing our products than would be the frozen vegetables. These things are not prepared using vinegar or acetic acid, correct? No, Your Honor. Okay, well, you're into your rebuttal time. You want to save that? Yes, Your Honor. Okay. Thank you. Thank you. Ms. Farrell? Thank you, Your Honor. Well, good morning. Your Honor, this case is... So, are the carburetor factors relevant here? No, Your Honor, they're not. What case says that? Your Honor, carburetor factors are primarily used in principal use analysis. I'm aware of that, but some of the factors seem to be pertinent here, and they're relying on them. And do you agree that the test is substantial transformation? No, Your Honor, I don't believe it's substantial transformation at all. I believe it's...you have two headings. You have a heading that's called food preparation, which is the appellant's preferred heading, and you have a heading which is vegetables prepared or preserved otherwise than by vinegar or acetic acid. That preparation, these are not... This is where I think the fatal flaw is for the appellant, is that these are not just vegetables. These are...the heading is designed for vegetables that are prepared. These vegetables have undergone preparation, but it hasn't substantially transformed them. They're still vegetables. Well, suppose they were made into vegetable soup. Would they still be vegetables? No, because then you have a heading for soups. We don't have a heading for... No, but that wouldn't affect whether they were within this particular heading for vegetables, would it? Suppose there's no heading for soups. Would vegetable soup be under this heading? Your Honor, I'm not sure if it would be under this heading. I'd have to go through the rest of the HTSUS to see if there was something more specific that better described it. But we don't have...because with soup, you have that introduction of an awful lot of liquid, so that may, you know, become the essential character. But I'm trying to...what I'm trying to get at is what do you think the test should be as to when a vegetable has sufficiently changed so that it's no longer within this heading on which you are? When...Your Honor, when it loses its recognition as a vegetable, if it becomes... I think there may even be a section in here for homogenized. I don't think that vegetables leave this heading when they get prepared. I don't think that they... Well, it says prepared, so they couldn't leave the heading. I'm sorry, Your Honor. It says prepared in the heading. Exactly, Your Honor. And, I mean, the fact that one could call this a food preparation, it is food. But the question is when does it cease to be a vegetable within the heading? And what I'm asking for is a test. In the crayfish case, it seemed as though substantial transformation was the test. I think, Your Honor, when you introduce product into...when you introduce something into this product that changes the essential character, I suppose one could call it a substantial transformation. Once the essential character of the article changes, then it may leave this heading. But here, you have things that are vegetables. They've been battered. They're still vegetables. Does that mean...you mentioned earlier in response to Judge Geisler, he was talking about the soup effect. If it loses its recognition as a vegetable, so you could have carrot soup with pieces of carrot floating around in it, you could still see the carrots, but if you ground it all up in a blender so that it was like this, you know, cream, then you would say it's lost its character, right? Perhaps, Your Honor. I'd have to see the headings that I was considering, but I don't... You say you've got vegetables. What do you have to do to a vegetable so it's no longer a vegetable? Put it in the stew. I think you have to add other ingredients to it, perhaps, as Judge Wallach said, put it in a stew. Well, because in a stew, you have beef cubes in there, and it may be that the beef becomes the primary essential character of that article. So now you've taken yourself out of vegetables, but in the facts before us in this case... Well, they've added tempura batter. Tempura battering. What's the test for whether tempura batter changes the essential characteristics or achieves a substantial transformation? I mean, why shouldn't we look to some of these carborundum factors, like channels of trade and physical characteristics and so on, to help us determine whether there's been a substantial transformation? Well, Your Honor, I suppose one could look to carborundum factors. I mean, this Court has always said that no matter what, even in basic classification, that the carborundum factors, even in a neo-nominee classification, have been looked at. So it's clear from cases that we're seeing from this Court that carborundum factors are always playing a role, because it does assist you to understand what is the article, and for whether or not there's a substantial transformation, and leaving one heading and going into another. But when we look at here, when we look at... You have... What is this product? Well, let's see, it's being sold in a food store. It's being sold in a store that also sells vegetables. Yeah, but it's not being sold in the vegetable aisle, it's being sold elsewhere. Well, it's being sold in an aisle where vegetable products are. But this... The character, the title of the article are tempura vegetables and vegetable bird nests. These are vegetables. Even the RT Foods acknowledges, by its name, they're marketing it to that prospective purchaser, that these are vegetables, they're not in the seafood aisle, they're not in the beef aisle, they're not in the chicken aisle. It's a little startling to think that somebody who went to buy string beans would think, oh well, this is just another form of string beans to buy, tempura battered string beans, right? Well, one could... I mean, if you just wanted plain string beans, then you would purchase plain string beans, and there's a heading in the HTSUS for that, for just either chilled, frozen, plain string beans. But if you're talking about taking a vegetable and preparing it, we have onion rings, for example. Onion rings are onions. There's no question that what you're eating is an onion ring, it just happens to be battered with some bread. That doesn't change the essential characteristics. Is it an onion ring case? Not that I'm aware of, Your Honor. But there are preparation cases, and this is a preparation. Yes, and the heading is Vegetables Prepared. And that's exactly what's happened to these vegetables, they've been prepared. They've been prepared in a way other than in Chapter 7, which is limits, you know, drying... Pickles. Yes. So, you have what has occurred here, is these vegetables are still vegetables, they've just been slightly changed in the sense of having the preparation of some tempura batter placed on them, but fundamentally, they're still vegetables. Well, you say that, but I'm not sure what I'm supposed to look at to answer that question. Well, I think, Your Honor, if we look in the appendix, there is a box, there's a representation of a box for the tempura vegetables. It's at Appendix 202 and 203. And we can see that on the front page of Appendix 202, we see a picture of the little bird's nests, which are kale, carrot, and onion, again with the tempura. And then we have some sweet potato, we have carrot, and some other eggplant. And if you turn to the next page, you have what the ingredients are. And the ingredients are carrot, onion, kale, sweet potato, eggplant, green bean, wing bean, then tempura batter. So, the last ingredient on the list is tempura batter. All the other ingredients that come in front are vegetables. So, the least of the article is the tempura batter. And they're done in order of the amount of product? Yes, Your Honor. So, we see in descending order how much is in the product. 23% of your daily fat intake, that's not coming from the vegetables, right? I'm hoping not, Your Honor. But I think the sauce is delicious. The sauce is delicious. And I suspect the soy and the soybean oil is adding to the level of fat in this particular product. But again, the ingredient list does show that it is vegetables. And that is the primary and the essential character of this particular article, notwithstanding the fact that it's been sprinkled and it's had some tempura batter placed on it. And again, people who are coming for this are coming to eat. I mean, tempura could be placed on anything. You could take chicken, you could dip chicken in tempura. And so, it doesn't change the nature that you're eating a piece of chicken. I mean, you have fried chicken. It's fundamentally fried chicken, notwithstanding the fact that you've battered it and fried it up. And that's essentially what's occurred here. You've taken vegetables, you've battered them, you've fried them, you've frozen them. They satisfy all of the conditions of 2004. There's nothing in this product that doesn't satisfy that condition. And I think the fundamental error is that while food preparation is a large, it's a basket provision. So that title, food preparation, that can capture a multitude of articles. But there is a specific provision in the tariff for these type of articles. And it is vegetables that are prepared. The appellant, I think, jumps over the idea that there's preparation with respect to these vegetables in 2004. The argument seems to always be devolving back to, well, these aren't raw vegetables. These are not just plain vegetables. But 2004 isn't for plain vegetables. It's for vegetables that have been prepared. Chapter 7 and the various categories of Chapter 7 are for those plain vegetables where nothing's happened. What tells us what prepared means here? Your Honor, I think there are cases from this court. I think Arbor Foods and I think also Orlando Foods gets into the issue of what is prepared. In our brief at page 12 over into page 13, Orlando Foods is quoted as saying, the term prepared suggests but does not require the addition of incidental ingredients that do not affect the essential character of the product. So prepared means you have your fundamental essential product and then you're adding some ingredients to it. You're enhancing. You're doing something to enhance that original product and that, I think, is what exactly is occurring here. You've taken fundamentally vegetables and you've enhanced them a little bit. You've changed their taste a little bit by adding some tempura batter. It's even, there are incidents where adding, say, butter sauce. Those articles, if you had a mixed vegetable and you added butter sauce, according to the explanatory notes, that product would still stay within 2004. So you've changed the taste a little bit because you've added butter sauce to it. But fundamentally... You made it a lot more fattening. You made it a lot more fattening. But as I think most, as the court may take judicial notice, the presence of fat into a product makes it a little bit more tasty, which is one of the problems in our country, I think, is we're making all of our food a little too tasty. But in here, you do have these, you have it being prepared, so you've enhanced the underlying product. But the underlying product remains. It is still a vegetable. It's just been enhanced by the introduction of the tempura batter and the frying and the flash freezing. If Your Honours have no further questions.  Thank you very much. Thank you very much, Your Honours. Mr. Herrick? Yes, Your Honour. What about the onion ring example? I'm sorry? The onion ring example. The fried onion ring example. I... Is that onions or is that something different? Just personal experience or court case? Well, how should it be classified? If there's a heading for prepared onions, is an onion ring a prepared onion? If there's... Okay, it would be a prepared onion. Prepared onion. It is a prepared onion? I would think so. Even here, we have here, like going back to the crawfish case. We're not saying this is not prepared or preserved. It is prepared or preserved. The thing is, it's no longer, as in crawfish, it's no longer... The issue was, it's no longer tail meat because it's a new product. Here, we're saying it's no longer... That these are no longer vegetables because it's a new product. It's a finished product. It's a food preparation. So, yes, it was prepared or preserved as part of making the new product. And in making the new product, the new final product, we do, in fact, have a food preparation, which is not elsewhere specified in the tariff schedule. The best I can get out of it, Mr. Eric, is that because it's in the shape of a bird's nest, you think it falls into a basket provision?  I'll go along with that, Your Honor. Okay. But I'll just... I mean, the fact that it appears in a different place in the supermarket doesn't seem to me to be dispositive or necessarily even helpful because you go in the grocery store over in the prepared foods where you sort of pick up your dinner already made for you, they got all the carrots cut up in little pieces and put in a little dish with plastic around it. So the vegetables are absolutely still vegetables, but they happen to be in the part of the market where folks, instead of picking up commodities that they're going to go and change into something, they're going to eat it just exactly the way it came as a fruit or a vegetable. Well, I think, I mean, my experience, I don't want to testify here, but just picking up on what my client had said in his sworn statement is that when you go into Trader Joe's, just repeating, is that if you want carrots, you go down this aisle and you've got cooked them because you want to eat carrots at night, or you want to eat kale or some of it. Maybe it varies from store to store. Whole Foods puts its stuff up in a different way. And maybe Trader Joe's has one aisle with fresh carrots in it and one aisle with frozen whole carrots in it that have been already peeled. And one aisle with frozen whole carrots that have been battered with tempura and pre-fried and then you bake them. How is that substantially different among the three? Well, as a consumer looking at the carborundum factors, if I go into a grocery store and I'm trying to decide what I want to prepare, let's say, for the meal, if I want fresh vegetables, as you just mentioned, I would go to that section and I would look for the fresh vegetables. If I wanted frozen, I would go to that particular aisle and look for frozen. But if I wanted a food preparation that's already been prepared, pre-made, in effect, that I can just pop in the oven that night and have a meal and not have to do subsidiary preparations for my dinner, then I'd go to a separate aisle where they have all the pre-made foods, pick up my dinner for the night, take it home, throw it in the microwave or whatever, and I've got my meal. It's all done. I don't have to go through various steps of cooking vegetables and potatoes. I can take those frozen, peeled carrots and do the same thing in the microwave, but yet I can't. And then you just end up with carrots. Or you just end up with kale or you just end up with... What if I batter them in tempura batter? I have prepared carrots, right? Yes, you're adding a flavor to a particular taste that you like. But why do that when you can just go over and pick up our product? It's all been done for you. If I put salt on those frozen carrots, are they substantially transformed? No. No, they're not. But when you go through, I mean, we've described in the briefs the process that takes place in Thailand, from getting it out of the ground until it's finally in the package and shipped to the United States. It's a long process, freeze, dry, cleaning, discarding products that are not suitable for consumption. It's all been described in the briefs as to what takes place, as opposed to just pulling a carrot out of the ground and whatever you do with it thereafter. Whether you freeze it or you just peel it and it comes out fresh, there's a lot more that goes into our products than just pulling it out of the ground. Well, I guess what you're saying is that a consumer would think that he or she was buying a tempura product rather than a vegetable product. But the problem is there's no evidence about consumer expectations in that respect in the record, right? Yes. I think that the consumer is looking for a product, Thailand, Thailand. Yeah, but you didn't, I think you could make an argument that when somebody's looking at a tempura product, the primary thing they're buying is the tempura aspect of it, whether it's shrimp, chicken, vegetables or whatever, as opposed to saying, I'm buying vegetables and this just happens to be covered with tempura. But the problem is there isn't anything in this record about consumer expectations with respect to what's being purchased, right? Well, I think what we're trying to say is that... No, but wait, just tell me, am I right? There's nothing about consumer expectations in that respect in the record? Whether they're expecting tempura product? Yeah. Whether the primary motivation is buying a tempura product as opposed to buying vegetables. I think the primary purpose is to buy a product... What I'm asking about the record, is there consumer expectation? There's nothing in this record about consumer expectation. The only thing about consumer expectation that I can see is your reference to those pages of the 106 and 107 of the appendix, which, as I said, you don't seem to say what you say. I would like to disagree with that. Would you go to 106 and 107 and you show me where it says, a purchaser can expect by purchasing the nest, a great pre-made meal that makes the worst cook look like a pro after being heated. That's a quote from your brief. OK, last paragraph, A106. Right, I have it in front of me, highlighted. They offer amazing pre-made meals that make even the worst cook like a pro. Who does? Trader Joe's. OK, and does that in any way reference the bird's nest or the vegetables? Are they referenced at all on either page of 106 or 107? Because I couldn't find them and I've read it at least 10 times. The reference, no, thank you. OK, thank you, Mr. Herrick, that concludes our argument. I'd like to thank both counsel and the case to submit.